IAN T. WADE, Bar No. 229150
iwade@littler.com
DANIEL L. GONZALEZ, Bar No. 223517
dlgonzalez@littler.com
JAYME DUQUE, Bar No. 307948
jaduque@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, California  90067.3107
Telephone:   310.553.0308
Fax No.:       310.553.5583

Attorneys for Defendant
WILLIAM S. HART UNION HIGH SCHOOL
DISTRICT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K. K, by and through her conservator and guardian ad litem, IVETTE KRUK,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM S. HART UNION HIGH SCHOOL DISTRICT,<br><br>Defendant. | Case No. 2:22-CV-02398-FMO-MAA<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION TO ENFORCE STAY PUT UNDER 20 U.S.C. SECTION 1415(J)**<br><br>Trial Date: None Set |

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

DEFENDANT'S OPPOSITION TO EX
PARTE APPLICATION FOR TEMPORARY
RESTRAINING OR 2:22-CV-02398

## I.     INTRODUCTION

The William S. Hart Union High School District ("District") hereby opposes Petitioner, KK's ("Student[1]"), by and though her purported conservator and guardian ad litem, Ivette Kruk[2] ("Parent") (collectively ("Petitioners"), *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction to Enforce Stay Put Under 20 U.S.C. Section 1415(J).  ("Application"). The Individuals with Disabilities Education Act requires local educational agencies to provide *educational services to children with disabilities* and not the type of 24 hour a day, 365 days a week , one-on-one psychiatric services to a 21-year old adult with purported self-injurious behavior.  Simply put, public schools are not set up to provide that type of intense psychological services that Plaintiff is requesting that the Court order on abbreviated notice.  The District's inability to provide these types of services is why, in this case, when it was available, the District paid for a third-party residential facility to provide student with educational services.  The District is still amenable to outsource that to a third-party residential facility when it is found.  However, the IDEA does not require – as Plaintiff – contends, that the District provide a one-on-one, psychiatric, adult care program, for every hour of the day and every day of the year.

*Additionally, Plaintiff's' TRO should be denied because there is no immediate and irreparable harm.*  Student is an adult student who is currently safely being treated at a psychiatric facility.  Arguably, Student will continue to be in the psychiatric facility along as her treating physician believe she is a harm to herself or those around her.  If and when she is released, it will only be pursuant to medical determination that she is no longer a threat to herself and those around her. Accordingly, there is no emergency that warrants an emergency temporary restraining

---

[1] Not clear why Plaintiff use initial for Student when it is undisputed the Student is an adult.

[2] Plaintiff has put forth no evidence to the District's request that evidence of the conservatorship and the scope of the same be provided.

DEFENDANT'S OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING OR 2:22-CV-02398

1   order.  (Application, p. 1:716-23.)

2   Plaintiff misleads in trying to enforce a "comparable placement" where the

3   California Office of Administrative Hearings ("OAH"), the public adjudicative agency

4   tasked with hearing these disputes, heard Plaintiff's request for a "comparable

5   placement" but did not order a comparable placement.  (Duque Decl., Exh. F, Motion

6   for stay put, pp. 2:2, 5:9-12.);  OAH did not order a comparable placement but instead

7   specifically ordered a "residential treatment center."  (Complaint for Injunctive Relief

8   Under IDEA (20 U.S.C. § 1415, Complaint, Exhibit 2, Order Granting Motion For Stay

9   Put, p. 3.)

10   Moreover, Petitioner's request for the District to provide 24 hour, 7 days per

11   week, 365 day per year care is grossly beyond the District's responsibilities under the

12   IDEA and it does not have the personnel or expertise to provide those services.  The

13   District therefore respectfully requests that the Application be denied, or in the

14   alternative, that a briefing schedule be set so that the District can more thoroughly

15   address Student's argument.

16   **II.  BACKGROUND**

17   Adult Student is a soon to be 21-year-old. (Complaint, ¶ 3, 5.)  Student qualifies

18   for special education as having multiple disabilities.  (Complaint ¶ 15-16.)   Ms. Kruk

19   at all times relevant herein, was, and continues to be, a resident of Saugus, California.

20   (Complaint ¶ 3.)

21   Since approximately December 2020, Student lived at Devereux League City, a

22   *therapeutic, residential treatment center* located in League City, Texas. (Complaint

23   ¶ 20.) Plaintiff was not in agreement with that placement.

24   On November 5, 20221, Petitioners filed a due process complaint with the

25   Office of Administrative Hearing, asserting their disagreement with Student's

26   placement at Deveraux League City. (Complaint ¶ 10.) On December 14, 2021,

27   Petitioner filed an amended complaint for due process hearing to adjudicate the issue

28

DEFENDANT'S OPPOSITION TO *EX
PARTE* APPLICATION FOR TEMPORARY
RESTRAINING OR 2:22-CV-02398

1    of an appropriate educational placement.  (Complaint ¶ 11.)

2    Nevertheless, on February 8, 2022, Parent received notice from Devereux

3    League City that it was closing Student's program effective March 10, 2022.

4    (Complaint, ¶ 22.) In response, the District agreed to look for an alternative, third-

5    party, residential treatment center that might take her.  (See Declaration of Lisa

6    Seeley.)  The District tried to place her in a third-party residential treatment center, but

7    none consented to take her.  (See Declaration of Lisa Seeley.)

8    Despite previously opposing Student's placement at Deveraux League City,

9    Plaintiff filed a Motion for Stay Put with OAH on February 10, 2022, alleging that

10   Petitioner should remain at a RTC or "Comparable Placement."  (Complaint ¶ 13;

11   Motion for stay put, pp. 2:2, 5:9-12..) On February 16, 2022, OAH granted

12   Petitioner's Motion for Stay Put and ordered that stay put was a *non-public residential*

13   *treatment center*.  See Order Granting Motion for Stay Put dated February 16, 2022,

14   attached as "Exhibit 2" to Petitioner's Complaint (Complaint ¶ 14.)

15   In light of Devereaux residential treatment center exiting Student out of the

16   program, and pending finding an alternative, third party, residential treatment center,

17   the District offered Student educational services on March 1, 2022:

18   • Individual counseling for 50 minutes per week;

19   • Parent and family counseling for 50 minutes per week;

20   • Behavioral intervention services for 15 hours per week;

21   • Behavior intervention development services for 10 hours per month. (See

22   Application, Exhibit 6 ("March 1, 2022 IEP Amendment").)

23   Upon Student's exit from Deverux, Student's parent agreed to allow the District

24   to transport Student back home to California and agreed that the District may

25   implement Student services outlined in Student's March 1, 2022 IEP amendment.

26   (See Declaration of Jayme A. Duque).  On March 26, 2022, Student returned home to

27   Saugus, California.  (Complaint, ¶ 25.)  Since Student's return, Parent has been

28

DEFENDANT'S OPPOSITION TO *EX*
*PARTE* APPLICATION FOR TEMPORARY
RESTRAINING OR 2:22-CV-02398

1  noncooperative in permitting the District to provide services.  Only by and through her

2  attorney, did Ivette Kruk consent to allow the  District to implement the

3  aforementioned March 1, 2022 educational services.  However, she was informing the

4  service providers that she was not consenting or in agreement with the March 1, 2022

5  IEP amendment.  Moreover, Parent has stated that she will not be present during

6  instruction.  However, a parent/guardian presence is required per the non-public

7  agency's authorization forms, which Parent refuses to sign.  (See Declaration of Lisa

8  Seeley.) Accordingly, Parent has obstructed the District from providing the same

9  services she now claims are causing "irreparable harm." (See Declaration of Lisa

10  Seeley; Application, p. 10:11-12.)   However, Student's educational program has

11  nothing to do with the Sunday evening incident that occurred when she was in the care

12  of Ivette Kruk.

13       Ms. Kruk hired private placement consultants to search for an alternative

14  residential treatment center.  However, to date, none have accepted Student.

15  (Complaint, ¶ 24)

16       On or around Sunday, April 10, 2022, Student was hiking with Parent in the

17  evening and became aggressive.  As a result, she was transported to the emergency

18  department, where she was placed on an involuntary 72-hour psychiatric.

19  (application, p. 7; Declaration of Ivette Kruk). The District was later informed that

20  Student would remain hospitalized at least for the remainder of the week.  (Seeley

21  Decl.)

22  **III.   ARGUMENT**

23       **A.     Plaintiff Fails to Provide Evidence of Conservatorship And the**

24  **Application Should Be Denied**

25       The purported conservator, Ivette Kruk, fails to provide any evidence of

26  conservatorship, or the scope of the same, and therefore there is no proof that Ivette

27  Kruk can bring the Application on behalf of Student and the Application should be

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

5

DEFENDANT'S OPPOSITION TO *EX
PARTE* APPLICATION FOR TEMPORARY
RESTRAINING OR 2:22-CV-02398

1   denied.  Accordingly, the applicaiton should be denied without further showing of Ms.

2   Kruk's authority to file and make educational decisions on the adult Student's behalf.

3   Evidence of conservatorship is further warranted where Ms. Kruk alleges that absent

4   the District providing 24-hour care – even while Student sleeps – she is unable to keep

5   Student or her family safe.

6   **B. Petitioner fails to meet the Standard of Review for Injunctive Relief**

7   **Because There is No Immediate, Irreparable Injury.**

8   Petitioner fails to meet the standard of review for injunctive relief as there is no

9   showing of immediate, irreparable injury where Student is currently receiving

10  psychiatric medical care that she needs and where the District does not have the

11  personnel to provide Student with the alleged "self-injurious, suicidal

12  ideation/gestures, physical aggression and AWOL behaviors." (Application, p. 11:8-

13  9.).

14  Under Federal Rule of Civil Procedure 65, a temporary restraining order may be

15  granted "only if (1) it clearly appears from the specific facts shown . . . that immediate

16  and irreparable injury, loss, or damage will result to the applicant before the adverse

17  party or that party's attorney can be heard in opposition." Fed.R.Civ.P. 65(b). A

18  showing of immediate, irreparable loss or injury is prerequisite to a temporary

19  restraining order.  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto*

20  *Truck Drivers,* 415 U.S. 423 (1974).  The restrictions imposed on the availability of *ex*

21  *parte* temporary restraining orders is counter to the notion of court action taken

22  before reasonable notice and an opportunity to be heard has been granted both sides of

23  a dispute.  *Ex parte* restraining orders should be restricted to serving their underlying

24  purpose of preserving the status quo and preventing irreparable harm just so long as is

25  necessary to hold a hearing and no longer.  *Id*. at 438-39.

26  Here, there is no immediate, irreparable loss or injury.  Petitioners have advised

27  the District that Student is currently obtaining psychiatric services in a hospital setting

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

6

DEFENDANT'S OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING OR 2:22-CV-02398

1   due to a situation outside of the education setting on a weekend, while she was under

2   Parent's care.  Student continues to be held under psychiatric care of her health care

3   providers, who are better suited than the District to address her medical needs.

4       Moreover, Student's has no immediate and irreplicable threat of injury to her

5   education and ability to participate in the services of her IEP as the District is ready,

6   willing and able to provide Student specialized academic instruction, behavioral

7   support, and therapy as outlined in her March 1, 2022 IEP Amendment.  In fact, any

8   missed services have not resulted from the District's inaction.  Instead, Ms. Kruk, has

9   made every effort to delay the provision of services.  Specifically, Parent was not

10  timely responding to the non-public agency responsible for transporting Student to

11  California.  (Duque Decl.)  Parent has repeatedly communicated to service providers

12  that she does agree with the services which was contrary to Parent's attorney stating

13  otherwise.  (Duque Decl.)

14      **C.  The OAH Rejected Plaintiff's Request For Comparable Placement.**

15      Student's request for comparable placement should be rejected where Plaintiff

16  has already requested stay put in the form of "Comparable Placement" and the OAH

17  rejected that request.  Exhaustion of administrative remedies is usually required for

18  students and parents who wish to challenge a change in placement. 20 U.S.C.

19  § 1415(b),(e).  However, the courts have recognized that exhaustion is not required

20  where it would be futile or where the administrative remedies available would be

21  inadequate. *Honig v. Doe*, 484 U.S. 305, 326-27 (1988).  Here, administrative

22  remedies would not be futile as Petitioner's prayer of relief is a *new* stay-put order for

23  a comparable placement has already been rejected. (Complaint for Injunctive Relief

24  Under IDEA (20 U.S.C. § 1415, Exhibit 2, Order Granting Motion For Stay Put, p. 3.

25      OAH's February 16, 2022 order is clear that stay-put is a non-residential

26  treatment center and not, the services requested in the Application.  However,

27  Petitioner is seeking a new stay-put order for a placement that has never been

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA 90067.3107
310.553.0308

7

DEFENDANT'S OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING OR 2:22-CV-02398

implemented and is highly restrictive in comparison to a residential treatment center. Specifically, Petitioner is requesting:

- 24 hours a day of supervision, 7 days a week, 365 days per year
- Two daytime staff
- One overnight awake staff
- A case manager/supervisor to manage milieu staffing and emergency Issues
- 360 minutes daily of individualized educational work with a certified special education teacher, including for the extended school year at a public or nonpublic school program for impaired adults 18-22 years old. The program should have no more than a 1-3 teacher-student ratio for educational or vocational activities, with 1-1 support available when needed.
- Medical, nursing, and Psychiatric services, including psychiatric visits once every two weeks and available on-call if needed, a nutritionist, nursing care of 2-5 hours per week.
- 60 minutes a week of individual counseling in two 30-minute sessions, 180 minutes of family counseling and support services while she is in the family home.
- Applied behavioral Analysis services, up to 15 hours a week, unless provided by the school program.
- Transportation to and from school, medical appointments, and community activities.

The placement, program, and amount of services sought by Petitioner have never been agreed upon by both parties, nor has it been ordered by the OAH.  It is notable that Petitioner raised similar issues and arguments in its Motion for Stay-Put with OAH.  However, OAH specifically did not order a new placement with wrap

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

8

DEFENDANT'S OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING OR 2:22-CV-02398

1   around services at the Student's home in addition to a special day class, as Petitioner

2   now seeks.

3        Injunctive relief is not the appropriate here as Petitioner is not requesting to

4   enforce the stay-put order.  Rather, Petitioner seeks a new stay-put order. Petitioner

5   must exhaust administrative remedies and seek an amended stay-put order from OAH.

6        **D. Petitioner's Request for Relief Is Beyond the District's responsibility**

7   **under the IDEA and Overly Restrictive.**

8        Ms. Kruk's inability to manage Kimberly at home, outside of the school setting,

9   does not in itself justify 24-hour care. See *Ashland Sch. Dist. v. Parents of Student*

10  *R.J.,* (9th Cir. 2009) 588 F.3d 1004, 1009.  The District simply does not have the

11  personnel to provide 24 hour a day care to Student.

12       24-hour care is not required for Student to access her education considering the

13  District offered 1:1 behavioral support during the duration of Student's school day to

14  ensure Student has access to her education and related counseling services.

15       Petitioner's requested placement request is highly restrictive.  Specifically,

16  Student would be provided three personal care givers each day 24 hours per day, 7

17  days per week, and 365 days per week.  While at an RTC, Student would not be

18  subjective to such restrictive care of a 2:1 ratio.  Moreover, Petitioner's request would

19  require these care givers to provide services to Student beyond what is required to

20  provide her access to her education.  For example, Petitioner's requested relief would

21  require care givers to live with Student and attend to her at all personal and

22  extracurricular activities and events, including but not limited to family gatherings,

23  dinners, vacations, hikes, etc.  The bounds of their responsibilities are endless if they

24  are to provide personal 24/7 care and are <u>not</u> comparable to the extent of behavioral

25  support Student receive at an RTC.  This level of behavioral services based on

26  Student's medical and mental health needs are beyond the District's capabilities and

27  responsibilities.

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

9

DEFENDANT'S OPPOSITION TO *EX
PARTE* APPLICATION FOR TEMPORARY
RESTRAINING OR 2:22-CV-02398

1      The District is not appropriate entity for Parent to seek 24/7/365 medical and

2  mental health care for their child to extent this is beyond Student's access to her

3  education.

4      The District's social worker has also reached out the family to help assist them

5  find resources for Student's non-education related needs.  (Duque Decl., Exhibit .)The

6  District has time and time again recommended Parent seek help from, among other

7  agencies, the regional center of the California Department of Developmental Services

8  ("DDS").  Regional Centers provide a wide array of services for individuals with

9  developmental disabilities.  The District can work in conjunction to the DDS to

10 provide for the education component of Student's needs.

11 **E.  District's Compliance under the February 16, 2022 Stay-Put Order and**

12 **Petitioner's Prayer of Relief Are Impossible.**

13     The District is not able to comply with OAH's stay-put order because

14 performance is impossible.  OAH's February 16, 2022 order is clear: "Student's stay

15 put shall be in a nonpublic residential placement with related services including

16 specialized academic instruction. The District does not run its own residential

17 treatment center.  Accordingly, the District must rely on third parties to provide such

18 services.  However, the District has no control of the admission process and

19 enrollment of these third-party residential treatment centers.

20     Both parties have acknowledged they have diligently searched for a non-public

21 RTC for Student.  Specifically, District's staff has researched and inquired with all of

22 the approved RTC with the California Department of Education.  The District also

23 inquired about non-CDE approved RTCs across the country without avail.  None of

24 the programs serve Student's demographic and behavioral needs.  Petitioner admits

25 that Student has been denied admission from any RTCs she has applied to and is also

26 not able to identify an RTC that would accept Student, even with help of educational

27 consultants.  Student's rejection by any available RTC is an unforeseen event and at

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

10

DEFENDANT'S OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING OR 2:22-CV-02398

1   not fault by the District.  Accordingly, compliance with the stay-put order is

2   impossible.

3        Moreover, compliance with Petitioner's requested relief would also be

4   impossible to implement.  Again, the District does not have three staff to provide 24/7

5   care to a student, including overnight care.  The District must rely on third parties to

6   provide such services.  The District has reached out to SELPA and colleagues to

7   determine is such services are offered by any non-public agencies.  To no avail, the

8   District is unable to identify any non-public agencies to provide 24/7 care to an adult

9   student at their home.  In addition, Petitioner seeks a program for impaired adults 18-

10  22 years old, with no more than a 1-3 teacher-student ratio for educational or

11  vocational activities, with 1-1 support available when needed.  Petitioner has not

12  identified a specific program that meets these criteria.  Moreover, the District has no

13  guarantee that a third party would accept Student into their program.  Petitioner's

14  injunctive relief must be denied as compliance would be impossible to guarantee.

15  **F. Petitioner has waived the February 16, 2022 Stay-Put Provision**

16       During the pendency of judicial or administrative proceedings, if "the State or

17  local educational agency and the parents otherwise agree, the child shall remain in his

18  then-current education placement." 20 U.S.C. § 1415(j).  This procedural safeguard is

19  commonly known as the "stay put provision" and its purpose is to prohibit "state or

20  local school authorities from unilaterally excluding disabled children from the

21  classroom ... during the pendency of review proceedings." *Honig v. Doe,* 484 U.S.

22  305, 306, 308, 98 L. Ed. 2d 686 (1988).

23       The February 16, 2022 stay-put order is no longer stay-put as Parent has agreed

24  otherwise for Student to return home and receive educational services in the home

25  setting.  Specifically, Parent agreed for the District to transport Student home to

26  California, and agreed to implement education services as outlined in the March 1,

27  2022 IEP starting on March 28, 2022. (See Declaration of Jayme A. Duque).

28

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

11

DEFENDANT'S OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING OR 2:22-CV-02398

It is well noted that Parent and Opposing Counsel, Diana Maltz, have minced their words to avoid explicitly stating Parent consents to the March 1, 2022 IEP amendment, but nonetheless it has been clear from the communication with Ms. Maltz and the actions of Parent that Parent agrees to implementing the March 1, 2022 IEP Amendment.  Parent has authorized the District to transport Student back to California and enter her home to provide services outlined in Student's March 1, 2022 IEP Amendment. (See Declaration of Jayme A. Duque).  The services have been well explained to Parent via Student's March 1, 2022 IEP amendment and by the services provides.  Accordingly, the February 16, 2022 stay-put order has been waived by agreement of the parties to provide alternative placement and services outlined in March 1, 2022 IEP Amendment.

**IV. CONCLUSION**

For the aforementioned reasons, The District respectfully requests that Plaintiff's Application be denied.  In the alternative, the District respectfully requests that a decision on the Application be postponed until the District can more fully brief why Plaintiff's requested relief is unwarranted.  Proceeding on an *ex parte* basis is unnecessary here where Student is receiving psychiatric help from a mental health institution much better suited to provide those services which a school district cannot.

Dated:        April 14, 2022

LITTLER MENDELSON, P.C.


/s/ Daniel L. Gonzalez
Ian T. Wade
Daniel L. Gonzalez
Jayme A. Duque

Attorneys for Defendant
WILLIAM S. HART UNION HIGH
SCHOOL DISTRICT

4889-2451-3820.2 / 018896-2401

LITTLER MENDELSON, P.C.
2049 Century Park East
5th Floor
Los Angeles, CA  90067.3107
310.553.0308

DEFENDANT'S OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING OR 2:22-CV-02398