Daniel R. Shaw (SB No. 281387)
daniel@snydershaw.com
Colleen A. Snyder (SB No. 274064)
colleen@snydershaw.com
Snyder & Shaw, LLP
3196 S. Higuera Street, Suite E
San Luis Obispo, CA 93401
Telephone: (805) 439-4646
Facsimile: (805) 301-8030

Rosa K. Hirji (SB No. 204722)
rosa@rkhlawoffice.com
Diana Maltz (SB No. 322748)
diana@rkhlawoffice.com
Law Offices of Hirji & Chau, LLP
5173 Overland Ave.
Culver City, CA 90230
Telephone: (310) 391-0330
Facsimile: (310) 943-0311

Attorneys for Plaintiff

# THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.K., by and through her conservator and guardian ad litem, IVETTE KRUK,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM S. HART UNION HIGH SCHOOL DISTRICT,<br><br>Defendant. | CASE NO: 22-cv-02398-FMO-MAA<br><br>**PETITION FOR APPROVAL OF COMPROMISE OF DISABLED ADULT'S CLAIMS**<br><br>**Judge:** Hon. Fernando M. Olguin<br><br>**Hearing:** November 17, 2022, at 10 a.m.<br><br>**Location:** Courtroom 6D, Los Angeles Courthouse |

-1-
Petition for Approval of Compromise of Disabled Adult's Claims

Plaintiff K.K., by and through her conservator and guardian ad litem, IVETTE KRUK ("Plaintiff") hereby petitions the Court for approval of the Parties' settlement of Plaintiff's claims arising under the Individuals with Disabilities in Education Act ("IDEA"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), Title II of the Americans with Disabilities Act ("ADA"), and related laws.  This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

K.K. is now twenty-one years old.  She has multiple disabling conditions, including autism, intellectual disability, and multiple mental health disorders.  *See* Complaint, ECF Doc. 1 at ¶ 15.  She has a history of engaging in dangerous behaviors, including suicidal and homicidal ideation, and requires significant mental health support and constant supervision.  She remains eligible for special education under the Individuals with Disabilities in Education Act.  *Id*. at ¶ 16.  The District is K.K.'s local educational agency responsible for the provision of her individualized education program ("IEP").  *Id*. at ¶¶ 6-7.

Ivette Kruk is K.K.'s mother, conservator, and guardian ad litem in this matter.  *Id*. at ¶¶ 3, 5.  As K.K.'s conservator, Ms. Kruk has the authority to make decisions about K.K.'s education and place of residence.

On November 5, 2021, Plaintiff filed a due process complaint against the District before the California Office of Administrative Hearings ("OAH").  *Id.* at ¶10.  The Case was assigned OAH Case Number 2021110193.  At the time, K.K. was residing in a private residential treatment center in Texas called Devereux Advanced Behavioral Health ("Devereux").  *Id*. at ¶20.  The District funded Devereux through K.K.'s IEP.  *Id.*  The November 5, 2021 due process complaint alleged that the District failed to adequately assess K.K. and failed to offer her appropriate goals, services, and placement in her IEP.  *Id*. at ¶ 10.  On December 14, 2021, Plaintiff filed an amended due process complaint with the OAH, alleging procedural violations and additional issues regarding more recent IEPs.  *Id*. at ¶ 11.

On February 8, 2022, the Parties participated in a mediation with the OAH. However, the case did not resolve. Decl. of Diana Maltz ("Maltz Decl.").

Also on February 8, 2022, Ms. Kruk was informed that Devereux was closing K.K.'s residential program and that she would be discharged on March 10, 2022. Decl. Ivette Kruk ("Kruk Decl."). On February 10, 2022, Plaintiff filed a Motion for Stay-Put with the OAH, asking that the District continue to provide K.K. with a residential treatment center pending resolution of the pending due process hearing. Complaint at ¶ 13. On February 16, 2022, the OAH granted Plaintiff's Motion, and ordered the District to provide K.K. with a similar residential placement, with related services, according to her last agreed-upon and implemented IEP. *Id*. at ¶ 14.

On March 1, 2022, anticipating K.K.'s discharge from Devereux, the District convened an IEP meeting and substantially reduced its offer of educational and related services. Kruk Decl. Ms. Kruk did not agree to the March 1, 2022 IEP. *Id*.

On March 25, 2022, Devereux closed its residential program and sent K.K. home to California. *Id*. K.K. deteriorated rapidly without the intensive supports she had relied upon at the residential treatment center. *Id*.

On April 8, 2022, Plaintiffs filed the Complaint for Injunctive Relief in this Court, seeking enforcement of the OAH's stay-put order.

On April 10, 2022, K.K. eloped from Ms. Kruk while on a walk. *Id*. She was located by police later that evening and was determined to be a danger to herself and/or others. *Id*. She was transported to the emergency room and placed on a psychiatric hold. *Id*.

On April 11, 2022, the Parties participated in a second mediation with the OAH. No agreement was reached. Maltz Decl.

On April 13, 2022, Plaintiff filed an *Ex Parte* Application for a Temporary Restraining Order, and asked the Court to order the District to provide K.K. with a comparable placement in the home setting, pending compliance with the OAH stay-put order. *Ex Parte* Application for TRO (ECF Doc. 10).

Also on April 13, 2022, Plaintiff requested to file a second amended complaint with the OAH, in order to include allegations regarding the District's failure to implement K.K.'s IEP and failure to comply with the OAH's "stay-put" order. Maltz Decl. The OAH denied Plaintiff's request to file a second amended complaint. *Id*.

On April 20, 2022, this Court granted Plaintiff's request for a Temporary Restraining Order ("TRO"). Order Re: *Ex Parte* Application for TRO (ECF Doc. 20). The District was ordered to provide K.K. with a comparable placement to the last-agreed upon IEP placement, pending identification and placement in an appropriate residential treatment center. *Id*.

On April 26, 2022, Plaintiff filed a second, separate complaint raising the new allegations regarding the District's failure to implement her last agreed-upon IEP. Maltz Decl.

During May 2022, the Parties proceeded to hearing on the original due process complaint before the OAH. *Id*. On June 29, 2022, the OAH issued its Decision in OAH Case No. 2021110193, finding the District denied K.K. a free appropriate public education during the 2019-2020 school year, by failing to conduct appropriate assessments. *Id*. The ALJ ordered the District to fund two independent educational evaluations, in the areas of academics and speech and language. *Id*.

Meanwhile, the District never complied with the TRO. Declaration of Colleen A. Snyder ("Snyder Decl."). Throughout June and July 2022, attorneys for the Parties participated in multiple meet and confer meetings and communications in an attempt to bring the District into compliance with the TRO and the IDEA's "stay-put" provision. *Id*. Plaintiff's attorneys drafted a Motion to Compel; however, it was never filed given representations made by the District's attorney that the District had identified qualified providers to contract for services ordered in the TRO. *Id*.

On August 11, 2022, the Parties participated in a mediation with a mediator from the Court's ADR panel. *Id*.; Maltz. Decl. Although the Parties made progress toward

resolution, no agreement was reached during mediation. *Id.* On August 16, 2022, the day the due process hearing in Plaintiff's second due process case was scheduled to begin, the Parties reached a settlement agreement to resolve all past claims and prospective educational claims. *Id.*; *see* Final Agreement dated August 16, 2022, attached as "Exhibit 1" to Maltz Decl.

**PROPOSED SETTLEMENT**

In exchange for Plaintiff's past waiver of all claims and future waiver of educational claims, the August 16, 2022 Agreement provides for the following consideration:

    a. The District will reimburse Plaintiff's special needs trust for educational and related services, including behavior services, in-home support, mental health services, and tuition, up to $82,800 per month, for a time period of twelve months, from August 1, 2022 through July 31, 2023;

    b. The District shall make a one-time reimbursement payment to Plaintiff's special needs trust in the amount of $40,000 for expenses already accrued at the time of settlement; and

    c. The District will pay Plaintiff's attorneys' fees in the amount of $229,000.

Under the terms of the Agreement, the District's payments to Plaintiff's special needs trust would replace its obligation to provide K.K. with an individualized education program and special education services, prospectively.[1] *Id.* The Agreement was conditioned on the approval of the District's school board and this Court. *Id.* On October 2, 2022, the District reported that its board had approved the Agreement. Maltz. Decl.

---

[1] Because K.K. will turn twenty-two in April of 2023, her eligibility for special education, and the District's ongoing obligation to provide her with an individualized education program, will terminate by operation of law at the end of the 2023 extended school year. Cal. Educ. Code § 56026(c)(4)(A).

## FAIRNESS TO MINOR

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (hereafter "*Robidoux*"). In the context of a proposed settlement in suits involving minors, the Court must "'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id*. at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). Settlement of the claims of a conserved adult, such as Plaintiff, are similarly subject to Court approval. Local Rule 17-1.2; see also *S.W. v. Turlock Unified Sch. Dist*., 2022 WL 2133789 (E.D. Cal. June 14, 2022) (applying case law regarding settlement of minor's claims to those of a conserved adult).

Local Rule 17-1.3 sets forth this Court's "Settlement of Claim Procedure" for "Minors or Incompetents," and directs that hearings on petitions to settle a claim of an incompetent person should conform to California Code of Civil Procedure section 372 and California Rule of Court 3.1384, "[i]nsofar as practicable." The disbursement of settlement funds shall be according to California Probate Code section 3600 et seq., unless otherwise ordered by the Court. L.R. 17.1.6.1.

California Code of Civil Procedure section 372 requires a person for whom a conservator has been appointed to be represented in a civil action by either a guardian ad litem appointed by the court or conservator of the estate. Cal. Code Civ. Proc. §372 (a)(2). The guardian or conservator has the power, "with the approval of the court … to compromise the claims of the conservatee." *Id*. at subd. (a)(3). Any settlement funds are required to be paid and delivered pursuant to the California Probate Code section 3600, et seq., which allows for payment into a special needs trust established for the benefit of the person with a disability. *Id*.

California Rule of Court 3.1384 is entitled, "Petition for approval of compromise of claim of a minor or person with a disability; order for deposit of funds; and petition for withdrawal," and requires that a petition for court approval of a compromise under Cal. Code of Civil Procedure section 372 must in turn comply with rules 7.950 or 7.950.5[2], 7.951, and 7.952.

California Rule of Court 7.950 requires that such a petition contain "… a full disclosure of all information that has any bearing on the reasonableness of the compromise …". California Rule of Court section 7.951 requires a disclosure of the minor or disabled adult's attorney's interest in the settlement of the claim, including details regarding the terms of the attorney's representation and terms of any agreement between the petitioner and attorney. Rule 7.952 requires attendance of both the disabled adult and person petitioning on his or her behalf at the hearing on the petition, unless the court dispenses of the requirement for good cause.

*Fairness of Settlement to K.K.*

Plaintiff's counsel believe that the Agreement is fair and reasonable and in K.K.'s best interest, considering the facts of the case and K.K.'s impending exit from special education in less than a year. Snyder Decl.; Maltz Decl. K.K. was without an educational program for approximately five months, from March 25, 2022 through August 2022, when Ms. Kruk began providing her with private services funded by her existing special needs trust. Kruk Decl.

During the majority of this time, K.K. was residing in various mental health treatment facilities where she received 24/7 supervision to ensure her safety. *Id*. On August 8, 2022, K.K. returned home. Ms. Kruk hired Athena Family Services, an agency that provides 24/7 live-in care and support, to provide behavior support and supervision to K.K in the home. *Id*. To date, Ms. Kruk has been satisfied with Athena's services, and K.K. seems to have

---

[2] Rule 7.950.5 pertains to expedited petitions which is not applicable here.

stabilized with their support. *Id*. Athena staff take K.K. into the community to practice daily living skills and social skills. *Id*.

The Athena staff are supervised by a private board-certified behavior analyst, Dr. Jeffrey Hayden, to consult on the behavior strategies used with K.K. *Id*. Ms. Kruk has hired a private credentialed special education teacher to work with K.K. for one hour per day, which is about as much academic work that K.K. can handle at this time. *Id*. K.K. receives weekly individual counseling funded through Ms. Kruk's private insurance, as well as family therapy. *Id*. On Monday, October 10, 2022, K.K. began participating in an intensive outpatient mental health program for three hours per day, to focus on trauma, coping skills, and nutrition. *Id*. This is also funded by Ms. Kruk's private insurance. *Id*.

The cost of this programming was estimated at $82,800 per month out-of-pocket, which is how the Parties arrived at the settlement amount. *Id*.; *see also* Snyder Decl. To date, the services have been paid for with money from K.K.'s existing special needs trust, which was funded in 2019 with proceeds from a civil settlement after she was abused in a residential program. Kruk Decl. Upon receiving Court approval of this Agreement, the District will reimburse these expenses to K.K.'s trust. *See* Agreement at ¶¶ 2-3.

When a school district fails to provide a student with a free appropriate public education, the parents of that child may make a unilateral placement in a private program, and seek reimbursement via the due process hearing procedures. *School Comm. Town of Burlington v. Dep't. of Educ.,* 471 U.S. 359, 369-370 (1985). This is essentially what this agreement allows for – reimbursement for the cost of K.K.'s private program, without the time and expense involved in a due process hearing. The certainty of reimbursement for these expenses allows Ms. Kruk to use the funds to provide a robust and quality educational program to K.K. without concern that she is risking the loss of K.K.'s trust funds. Moreover, Ms. Kruk has the flexibility to choose which providers to contract with for K.K.'s services and can therefore minimize the chance of unanticipated future disruptions in programming.

Plaintiff's counsel has reviewed settlements in similar cases where students were left without an educational program for a prolonged period of time, and believes this to be a fair settlement given the facts and circumstances of this case in comparison. Snyder Decl.; Maltz Decl.

For example, in *S.W. v. Turlock Unified School Dist.*, Case No. 1-20-cv-00266-DAD-SAB (E.D. Cal. June 14, 2022) ("*S.W.*"), the Eastern District of California approved the settlement of a disabled adult student's past and prospective claims under Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA, in exchange for a lump sum payment of $500,000. Approximately $64,000 of this was allocated to attorneys' fees, leaving the student with a total net recovery of $434,000. *Id*. at *11. The student in *S.W.* was left at home without an educational program for several years, but had received some services provided by the District as of the date of the settlement. *Id*. at *8-9.

In *Becker v. Long Beach Unified School District*, Case No. 2:20:mc-00098 (C.D. Cal. Oct. 20, 2022) ("*Becker*"), the Central District Court of California approved a settlement of a student's educational claims alleging he had been excluded from school for several years, in exchange for an initial payment in the amount of $140,000. The settlement in *Becker* also included a prospective waiver of educational claims while the student remained eligible for special education, in exchange for additional payments of $140,000 per year.

In this case, K.K. will age out of special education at the end of the 2023 extended school year. Cal. Educ. Code § 56026(c)(4)(A). Her needs are significant, and the amount of money that the District has agreed to dedicate to monthly reimbursements for her educational program is correspondingly significant. Over the course of the twelve-month term of the Agreement, from August 1, 2022, through July 31, 2023, she may receive reimbursement for educational and related expenses in an amount up to $1,033,600. Agreement at ¶ 4. This money will ensure that K.K. receives the services she is entitled to, close to her family, and in her local community, until she transitions out of special education next year.

*Plaintiff's Attorney's Interest in Resolution of the Claims*

In addition to the reimbursements to K.K.'s trust, the Agreement calls for the District to pay Plaintiff's attorney's fees in the amount of $229,000. *See* Agreement at ¶ 8. Plaintiff initially retained the Law Offices of Hirji & Chau, LPP to represent K.K. in a due process case with respect to the adequacy of the District's assessments and placement. Kruk Decl. According to the terms of their client agreement, the Law Offices of Hirji & Chau would represent K.K. with respect to obtaining a free and appropriate public education under the IDEA from the District, including pursuing a special education due process case with the Office of Administrative Hearings. Matlz Decl. Per the client agreement, the Law Offices of Hirji & Chau represented K.K. at discounted rates through completion of the first due process case. *Id*. On July 22, 2022, the Law Offices of Hirji & Chau executed an addendum to the client agreement providing for representation of K.K. through the remainder of second due process case at a flat fee. *Id*. Both the original agreement and addendum provided that the Law Offices of Hirji & Chau would pursue attorneys' fees from the District at market hourly rates and that the client would be reimbursed for the fees paid based on payment from the District. *Id*.

The Law Offices of Hirji & Chau successfully prosecuted the first due process case, which involved substantial preparation and attendance of a 4-day hearing. *Id*. In addition, the Law Offices of Hirji & Chau conducted substantial preparation for hearing in the second due process case – which settled on the first day of hearing – and participated in four mediations – three through the Office of Administrative Hearings and one in this court. *Id*. In total, the Law Offices of Hirji & Chau incurred $181,749.50 in attorneys' fees that are reimbursable under the IDEA. *Id*. The Law Offices of Hirji & Chau has agreed to accept $144,000 to fully resolve their fees and costs incurred as part of this litigation. *Id*. This represents about seventy-nine percent of the total reimbursable fees and costs that the Law Offices of Hirji & Chau has incurred in this matter. This will result in a reimbursement of fees in the amount of $74,937 to K.K. *Id*.

Petition for Approval of Compromise of Disabled Adult's Claims

1  While the first due process case was pending, K.K. was discharged from her
2  residential placement and the District stopped implementing her individualized education
3  program. Hirji & Chau consulted with the Shaw Firm regarding the filing of a Temporary
4  Restraining Order ("TRO") in federal court. Snyder Decl. On March 23, 2022, in order to
5  represent K.K. in the federal action, the Shaw Firm entered into a contract with Ms. Kruk.
6  The terms of the Shaw Firm client agreement allowed for the Shaw Firm to co-counsel with
7  Hirji & Chau, "assist in advising and representing Client through a due process hearing with
8  respect to K.K.'s special education supports and services," and "prepare and file a temporary
9  restraining order … to seek enforcement of K.K.'s stay put placement." Snyder Decl. Ms.
10 Kruk agreed to pay the Shaw Firm's invoices on a monthly basis; however, the Shaw Firm
11 also agreed to pursue reimbursement of reasonable legal fees and costs from the District. *Id*.

12  The Shaw Firm was successful in obtaining a TRO, and did substantial work briefing
13 the Motion for Preliminary Injunction. *Id*. The Shaw Firm also located Dr. Hayden and
14 Athena Family Services, two unique and qualified providers that have successfully worked
15 with K.K. since August 2022. *Id*. This took a substantial amount of time, including
16 multiple rounds of phone calls to different agencies and advocating for payment of services
17 with the District. *Id.* Attorneys from the Shaw Firm participated in two mediations, one in
18 the administrative forum and one in this court, and consulted with the attorneys at Hirji &
19 Chau regarding legal strategy for the second due process matter. *Id*.

20  The total fees and costs incurred by the Shaw Firm at the time of this writing is
21 $108,233.28. *Id*. According to her contract with the Shaw Firm, Ms. Kruk remains
22 responsible for the payment of these fees and costs; however, to date, she has not paid
23 anything. *Id*. The Shaw Firm has agreed to accept the amount of $85,000 to fully resolve
24 their fees and costs incurred as part of this litigation. *Id*. The balance will not be charged to
25 Plaintiff or Ms. Kruk. *Id*. Considering the successful outcome of the federal work, and the
26 time and expertise required to achieve such an outcome, a recovery of $85,000,
27 approximately seventy-eight percent of the fees and costs accrued by the Shaw Firm, is a
28

-11-
Petition for Approval of Compromise of Disabled Adult's Claims

significant compromise.

  For the reasons set forth above, the Parties respectfully request that the Court approve the proposed Agreement, the reimbursement of educational and related expenses to K.K.'s special needs trust according to the terms of the Agreement, and payment of attorneys' fees in the amount of $229,000.

DATED: October 14, 2022    SNYDER & SHAW

              By: /s/ Colleen A. Snyder
                 COLLEEN A. SNYDER

DATED: October 14, 2022    HIRJI & CHAU

              By: /s/ Diana Maltz
                 DIANA MALTZ